**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **SARAH M. ORTÍZ GONZÁLEZ;**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**DOCTORS' CENTER HOSPITAL SAN JUAN;DR. MIRIAM PÉREZ PABÓN ; CONJUGAL PARTNERSHIP constituted between DR. MIRIAM PÉREZ PABÓN AND JOHN  DOE PÉREZ; DR. RAMÓN PIZARRO FORNARIS; CONJUGAL PARTNERSHIP constituted between DR. RAMÓN PIZARRO FORNARIS AND JANE DOE PIZARRO; DR. CRISTIAN COLÓN RIVERA;CONJUGAL PARTNERSHIP constituted between DR. CRISTIAN COLÓN RIVERA AND JANE DOE COLÓN; SIMED; TRIPLE S PROPIEDAD; PROFESSIONAL PARTNERSHIP X; DR. JOHN DOE; DR. RICHARD ROE; RICHARD DOE; CORPORATION X; CORPORATION Y; CORPORATION Z; INSURANCE COMPANY X**<br><br>**Defendants.** | **CIVIL NO.   3:17-cv-2247**<br><br><br><br>**PLAINTIFFS DEMAND TRIAL BY JURY** |

## <u>COMPLAINT</u>

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs through their undersigned attorney and very respectfully **STATE, ALLEGE AND PRAY:**

### I. JURISDICTION

1.1     The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Section 1332 (a) (1).

1.2     This action is of a civil nature, invoking exclusive of interest and costs a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).  Every issue of law and fact alleged herein is wholly between citizens of different states.  Plaintiffs invoke the diversity jurisdiction of this Honorable Court pursuant to the provisions of Article III of the Constitution of the United States.

1.3     The Statute of Limitations was tolled by timely delivery of extra judicial claim letters.

## II. THE PARTIES

2.1     Plaintiff, Sarah M. Ortíz González is the daughter of the deceased Pedro J. Ortíz Santiago; she is of legal age, and is and has been a resident of the state of Georgia.

2.2     Co-defendant, Doctors' Center Hospital San Juan is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the said Commonwealth of Puerto Rico.

2.3     Co-defendant, Dr. Miriam Pérez Pabón, her husband, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.

2.4     Co-defendant, Dr. Ramón A. Pizarro Fornaris, his wife, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.

2.5     Co-defendant, Dr. Cristian Colón Rivera, his wife, and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.

2.6     Triple S Propiedad is the insurance company which provided coverage for the acts of medical malpractice of Codefendant Dr. Ramón A. Pizarro Fornaris and is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

2.7     SIMED is the insurance company which provided coverage for the acts of medical malpractice of Codefendant Dr. Miriam Pérez Pabón and of any unknown codefendant and is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

2.8     Co-defendants, whose names are unknown to plaintiffs, Dr. John Doe, Dr. Richard Roe and Richard Doe are citizens of the Commonwealth of Puerto Rico and are jointly and severally liable to plaintiffs.

2.9     Co-defendants Corporations X, Y & Z, whose names are unknown to plaintiffs, are entities organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

2.10    Professional Partnership X whose names are unknown to plaintiffs, are entities organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

2.11    Codefendant Insurance Companies X is the insurance companies which provided medical malpractice coverage to a codefendant at the time of the events and is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the said Commonwealth of Puerto Rico.


### III. ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

3.1     On January 1, 2016, Mr. Pedro J. Ortíz Santiago prematurely died in Hospital Municipal de San Juan after a prolonged and painful hospitalization.

3.2     The autopsy report established as cause of death: Laceration of the esophagus by

Complaint
Sarah Ortiz vs, Doctors et al
Page 4

foreign body.

3.3    On November 17, 2015, Mr. Ortíz, 95 year old had been brought to the emergency room at Doctors' Center Hospital San Juan by BVR ambulances from Hogar La Providencia with symptoms of Dyspnea, hypoxia , R/O Aspiration Pneumonia and hypoglycemia .

3.4    The triage was performed at 7:56 PM, and he presented Oxygen Saturation of 94% and was started with Bronchodilators and steroids.

3.5    According to the medical record the patient was evaluated by the emergency Physician at 8:00 PM, who described him as hypo active and lethargic with shortness of breath and productive sputum after food ingestion.

3.6    At 10:32PM according to the record the emergency room physician ordered Ventury Mask at 35% O2 to be placed on the patient.

3.7    An initial X-Ray performed that day, was interpreted and signed by co-defendant Dr. Pizarro Fornaris at 11:07 PM describing a "Normal heart size with calcified aorta. Lungs are clear with no infiltrates and no pleural effusion."

3.8    On November 30th, an addendum was added to the November 17th X-Ray by Dr. Pizarro which reads: "There is a metallic density projecting in the lower neck measuring approximately 1.6 cm consistent with a dental bridge is localized within the cervical esophagus without free gas."

3.9    At 10:55 PM the emergency room physician placed a consult to internal medicine specialist co-defendant Dr. Pérez Pabón for "aspiration pneumonia".

3.10    Mr. Ortíz remained under the care and monitoring of the emergency room physicians and nursing and paramedical personnel during the night.

3.11    The medical chart does not reflect medical re-evaluation nor X-Ray interpretation performed by any physician during the night.

3.12    According to the record, the consultation to the internal medicine physician codefendant Dr. Pérez Pabón was answered on November 18, 2015 around 11:18 AM.

3.13    Very recently, Plaintiff was informed by Dr. Pérez Pabón's insurance company that the physician who answered the consult placed to Dr. Pérez Pabón was codefendant Dr. Cristian Colón Rivera who was covering for her.

3.14    In his evaluation Dr. Colón Rivera described the Chest X-Ray as negative; reported cough and intercostal; no mention of the foreign body.

3.15    Co-defendant Dr. Colón Rivera ordered the patient to be admitted to the services of co-defendant Dr. Pérez Pabón with a diagnosis of pneumonia.

3.16    The patient was started in diet. No aspiration precautions were ordered, or bed elevation. He was ordered antibiotics, respiratory therapy, diuretics, Lovenox and an echocardiogram among other treatment orders. Consults were placed to the hospital's cardiology and pneumology specialists.

3.17    The cardiologist evaluation was performed on November 18, 2015 at 7:55 PM and an Echocardiogram performed the same day presented: Normal left ventricle function. No wall motion abnormalities nor hypertrophy. Sclerotic aortic valve without stenosis nor significant insufficiency.

3.18    On November 19, 2015, at 8:00 AM, codefendant Dr. Pérez Pabón ordered a nitro patch "stat" via telephone and at 7:20 PM placed another order also via telephone.

3.19    The pneumologist answered the consult and evaluated the patient on November 19, 2015 at 1:45 PM, twenty-six (26) hours after the consult was placed. He described the chest X-rays as well expanded lungs clear with no infiltrates.

3.20    The pneumologist's diagnosis were: Aspiration of food content, respiratory

insufficiency, aspiration pneumonia and mild hypoxemia.

3.21    The patient continued with same treatment, being fed oral diet and being treated by other physicians whose identities are still unknown to plaintiff and who continued to diagnose aspiration pneumonia.

3.22    A new chest X-Ray was performed on Sunday November 22, 2015 at 7:45 PM describing a "metallic dental bridge overlying the mediastinum, likely outside the patient which was signed on November 23, 2015 at 9:41 AM" with findings reported to a nurse at 9:45 AM that day. The notes of the internists nor pneumologist did not mention this vital finding until 7:00 PM when it is mentioned by Dr. Pérez Pabón in her progress note.

3.23    An addendum to that report described: "when compared to the prior study 11/17/2015 there is visualization of metallic density projecting at the included lower neck correlating with the dental bridge at cervical esophagus level, interval caudal migration."  According to the report these findings were discussed with the attending in charge Dr. Pérez Pabón at 3:55 PM on November 23rd.

3.24    Another chest X-Ray (PA and lateral) performed on November 23rd, reported: "The previously described metallic dental bridge is localized within the proximal esophagus from T3 to T5 level, in retrospect partially visualized at the included lower neck at initial examination 11/17/2015". These findings were also reported to Dr. Pérez Pabón at 3:55 PM on November 23rd.

3.25    Dr. Pérez Pabón's re-evaluation was performed on Monday November 23, 2015 at 7:00 PM when she mentioned the finding and consulted a Gastroenterologist at 9:45 PM.

3.26     The consult was not placed "Stat" (immediately) and was notified to the consultant by the nurse around 10:00 AM of the next day, November 24th.

3.27    Dr. Pérez Pabón did not place the patient NPO (nothing per mouth) as soon as she was

informed of the foreign body in the esophagus.

3.28    The hospital's gastroenterologist responded to the consult and evaluated the patient on November 24, 2015.

3.29    That same day at 5:30 PM the gastroenterologist ordered the patient to be placed NPO (nothing through the mouth) after breakfast.

3.30    The pneumologist evaluated the patient that day at 6:00 PM and finally identified the foreign body finding.

3.31    The Gastroenterologist programmed an upper endoscopy for next day afternoon for possible oral removal of the bridge.

3.32    The upper endoscopy was performed on Wednesday November 25, 2015 afternoon between 1:15 PM and 1:30 PM. He identified a foreign body with metallic protuberances approximately 5 Cm beyond the upper esophageal sphincter. It did not move with gentile pressure. The metallic protuberance had entered the mucosa with visible white exudate. His plan was to discuss the case with an ENT for transfer.

3.33    At 4:30 PM the gastroenterologist ordered to keep patient NPO and started in parenteral nutrition.

3.34    A neck CT performed that day presented the known foreign body and gastroesophageal reflux.

3.35    During the next days the patient continued deteriorating, no specific evaluation was performed for days and the record does not describe the specific arrangements performed for the necessary transfer to another institution for life saving surgery.

3.36    While waiting to be transferred the patient suffered an extravasation of IV fluids on

December 1, 2015.

    3.37    On December 2, 2015 Mr. Ortíz Santiago was finally transferred to the University Hospital in San Juan where he was evaluated by multiple specialists and underwent surgeries for foreign body extraction on December 2nd & 3rd, 2015, consisting of esophagoscopy, sternotomy, removal, repair of tracheal laceration and esophagus.

    3.38    Mr. Ortíz Santiago suffered multiple complications and remained in critical condition in the ICU until he finally died on January 1, 2016.

    3.39    Plaintiff consider that neither the medical nor the paramedical personnel at Doctors' Center Hospital San Juan  provided the patient with the attention and care that would have prevented his severe damages and death.

    3.40    Plaintiff still lack complete medical records and therefore does not have full knowledge of all the facts relevant to the medical malpractice nor of all the persons and/or entities liable for the damages caused to Mr. Ortíz Santiago and plaintiff.

    3.41    In addition, the medical records produced to plaintiff by Doctors' Center Hospital San Juan Hospital is scant, deficient and inconsistent with respect to crucial events and it contains multiple illegible entries. As a result, plaintiff cannot have knowledge of all the facts relevant to the medical malpractice and all the parties involved.

    3.42    Mr. Pedro Ortíz Santiago had an obvious and evident emergency while under the care and supervision of Doctors' Center Hospital San Juan's personnel, which was not identified nor treated in a timely and adequate manner, directly causing and/or contributing to his deterioration and death.

    3.43    During his hospitalization, Mr. Pedro Ortíz Santiago was treated by the physicians,

nurses, and paramedical personnel from Doctors' Center Hospital San Juan, including Dr. Pérez Pabón,

Dr. Pizarro Fornaris, Dr. Cristian Colón, and unknown codefendants and they are therefore jointly and

severally liable to plaintiffs for their negligent acts and/or omissions under the provisions of articles

1802 and 1803 of the Puerto Rico Civil Code and the jurisprudence from the Supreme Court of P.R.

3.44    Mr. Pedro Ortíz Santiago's damages were caused by the negligent and/or late

treatment that was given to him by Doctors' Center Hospital San Juan's medical and paramedical

personnel, including Dr. Pérez Pabón, Dr. Pizarro Fornaris, Dr. Cristian Colón, and other unknown

codefendants. Had it not been by all the tortious and negligent acts, errors and omissions of all co-

defendants his damages, as well as plaintiff's damages should have been avoided.

3.45    Plaintiff also estimates that Doctors' Center Hospital San Juan's medical and

paramedical personnel did not display the care nor the cautionary measures that a prudent and

reasonable man would in such circumstances, thus not offering Mr. Ortíz Santiago the medical

attention that was due to him.

3.46    Co-defendant, Doctors' Center Hospital San Juan was grossly negligent for not

procuring nor providing Mr. Pedro Ortíz Santiago with competent medical and paramedical personnel

for the diagnosis, treatment and correction of his evident emergency conditions and is therefore liable

to plaintiff under the provisions of articles 1802 and 1803 of the Puerto Rico Civil Code and the

jurisprudence from the Supreme Court of P.R.

3.47    Co-defendant, Doctors' Center Hospital San Juan is also liable for the negligent and

inadequate medical treatment given to the patient by its medical and paramedical personnel including

codefendants Dr. Pérez Pabón, Dr. Pizarro, Dr. Cristian Colón and unknown codefendants.  To wit:

for the lack of monitoring and supervision, for the lack of and/or delayed implementation of procedures

and diagnostic and therapeutic orders by its personnel; allowing scant and deficient medical record keeping and/or alteration and manipulation of the medical record; for failure to timely identify Mr. Ortíz Santiago's emergency condition; for not providing Mr. Ortíz Santiago with competent medical and paramedical personnel for identifying, treating and correcting his evident emergency condition and avoiding further complication; for not implementing timely and adequate corrective treatment; for allowing the management of the patient in violation of its own protocols and of the best practice of medicine; for not providing necessary and timely consultations with specialists; for causing the rapid deterioration of the patient; for not informing his relatives of the complications he had suffered in a timely manner; for withholding information from the patients relatives precluding them from making timely arrangements to find the necessary specialists and institution to treat the patient; for the inexcusable delay in transferring the patient; for the failure of its physicians to interpret diagnostic tests; among other violations of the standard of care. The negligent acts, errors and omissions of their medical, technical, administrative and paramedical personnel directly caused and/or contributed to the deterioration and damages suffered by Mr. Pedro Ortíz Santiago.

3.48    Doctors' Center Hospital San Juan, is also liable to plaintiff for the negligent acts, errors and omissions of the unknown co-defendant corporations and medical partnerships, their agents, employees and or partners.

3.49    Doctors' Center Hospital San Juan is liable to plaintiff for the election and selection of the medical personnel that negligently attended the patient, including co-defendants Dr. Miriam Pérez Pabón, Dr. Ramón Pizarro Fornaris, Dr. Cristian Colón Rivera and unknown physicians, partnerships and corporations.

3.50    Co-defendant, Dr. Cristian Colón Rivera was grossly negligent in his treatment and

follow-up, or lack thereof, of a gravely ill patient.  To wit: inadequate treatment as well as lack of analysis and evaluation of his symptoms and/or conditions, for his failure to diagnose the patient's emergency condition and complications; for not ordering indicated and necessary diagnostic and tests for the patient; for not providing necessary and timely consultations with specialists to attend the patient's complication;  for not providing him with the follow-up required by the best practice of medicine; for causing the rapid deterioration of the patient; for his failure to insure that Mr. Ortíz Santiago was treated in a timely manner and by competent physicians; for delaying diagnosis and treatment of Mr. Ortíz's condition; for delaying his transfer to another institution;  among other deviations of the due standard of care.  His actions, omissions and negligent errors caused and/or contributed to the damages, deterioration and death of Mr. Pedro Ortíz Santiago's and plaintiff's damages. The Conjugal partnership constituted by him with his unknown spouse Jane Doe Colón is also liable to plaintiff inasmuch as they benefited from the physicians' acts. His insurer, which name is unknown to plaintiff at this time is also liable to plaintiff because of its contractual relationship with its insured for his acts of medical malpractice.

3.51    Co-defendant, Dr. Ramón Pizarro Fornaris was grossly negligent in his interpretation of the chest X-Ray performed on the patient on November 17th, 2015 by not identifying the foreign body which clearly showed in said X-Ray. His actions, omissions and negligent errors caused and/or contributed to the damages, deterioration and death of Mr. Pedro Ortíz Santiago and plaintiff's damages. The Conjugal partnership constituted by him with his unknown spouse Jane Doe Pizarro is also liable to plaintiff inasmuch as they benefited from the physicians' acts. Codefendant Triple S Propiedad is also liable to plaintiff because of its contractual relationship with its insured codefendant Dr. Ramón Pizarro Fornaris for his acts of medical malpractice.

3.52     Co-defendant, Dr.  Miriam Pérez Pabón, who was the physician who was assigned by the hospital and was consulted to admit the patient to the hospital was grossly negligent in her treatment and follow-up, or lack thereof, of a gravely ill patient.  To wit: inadequate treatment as well as lack of analysis and evaluation of his symptoms and/or conditions, for her failure to diagnose the patient's complications; for not implementing timely and adequate corrective treatment; for not ordering indicated and necessary treatment and diagnostic tests and procedures; for not providing necessary and timely consultations with specialists to attend the patient's complication; for not immediately informing him nor his relatives of the complication he had suffered; for not providing him with the follow-up required by the best practice of medicine; for delaying his transfer to another institution; among other deviations of the due standard of care.  Her actions, omissions and negligent errors caused and/or contributed to the damages and deterioration of Mr. Pedro Ortíz Santiago's and plaintiff's damages. The Conjugal partnership constituted by her with her unknown spouse John Doe Pérez is also liable to plaintiff inasmuch as they benefited from the physicians' acts.  Codefendant SIMED is directly liable to plaintiffs because of its contractual relationship with its insured codefendant Dr. Miriam Pérez Pabón for her acts of medical malpractice.

3.53     Mr. Pedro Ortíz Santiago's damages were caused by the negligent treatment he received from all the co-defendants.  Had it not been for the negligent actions, errors, and omissions from all co-defendants, his damages and death, as well as those suffered by plaintiff, should have been avoided and / or diminished.

3.54     The patient's accelerated deterioration, complications and damages were due to the absence of necessary and mandatory evaluation and treatment by all co-defendants.

3.55     The plaintiff continues in her efforts to gather all pertinent information about the facts

and treatment that was provided and -not provided- to the patient.

3.56     Unknown co-defendants Dr. John Doe and Dr. Richard Roe are doctors who treated the patient during his illness and / or hospitalizations at the Doctors' Center Hospital San Juan

3.57     Unknown co-defendant Richard Doe is a person who somehow intervened with the patient during her illness and / or treatment and / or hospitalizations and caused the patient harm as a result of his / her negligent acts and errors and omissions and is therefore jointly and severally liable to the plaintiff.

3.58     The co-defendant Professional Society X is an entity formed by the co-defendant physicians with other partners whose identity is at this moment unknown to plaintiffs and who benefited from the tortious actions and omissions of the codefendant partner; said entity and its unknown partners are therefore jointly and severally liable to plaintiff.

3.59     Corporations X, Y & Z, are entities whose identities are unknown to plaintiff at this moment, and provide medical services to the codefendant institutions, and/or were in some way benefited by the tortious actions and omissions of one or all co-defendants and/or its agents, ordered or in any way had something to do with their tortious actions; said entities are therefore jointly and severally liable to plaintiff.

3.60     All codefendants are jointly and severally liable to plaintiffs under articles 1802 and 1803 of the Puerto Rico Civil Code for their torts and negligent acts and omissions, which departed from the standards of medical care and treatment recognized as adequate by the medical profession in light of the modern means of instruction, education and communication, and directly caused and/or contributed to Mr. Pedro Ortíz Santiago's damages as well as to injuries suffered by plaintiff.

3.61     Plaintiff also estimates that none of the co-defendants displayed the care nor the

cautionary measures that a prudent and reasonable man would in such circumstances, thus not offering

Mr. Pedro Ortíz Santiago the medical attention that was due to him.

3.62    As a direct consequence of herein co-defendants' gross negligence, plaintiff Sarah

Ortíz has suffered, suffers and will forever suffer deep and severe mental and emotional anguishes,

severe depression, and loss of enjoyment of life for watching her father´s immense suffering and

for the loss of her beloved father as a result of the damages caused to him. requests as compensation

for her damages a sum of not less than FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS.

3.63    As a direct consequence of herein co-defendants gross negligence Mr. Pedro Ortíz

Santiago suffered immensely and died prematurely.  For the purposes of this cause of action,

plaintiff Sarah Ortíz has complete inheritance rights and is the sole beneficiary and heir of her

father's cause of action. She requests a sum of not less than FIVE HUNDRED THOUSAND

($500,000.00) DOLLARS as compensation for the suffering and mental and/or emotional anguish

endured by her father, which she inherits.

3.64    Plaintiff also claims as damages any medical expenses covered by the patient's

health insurance company as collateral source in the event that said insurance company and-or

Medicare determines that lien exists.

3.65    Mr. Pedro Ortíz Santiago's damages and death and plaintiff's damages could have been

avoided and/ or diminished if all co-defendants had acted with the necessary diligence and given her

the necessary treatment as mandated by the best practice of medicine and the standards of medical

care, as was due to him.

3.66    All codefendants, including unknown persons and-or entities, are jointly and severally

liable and respond to the claimants pursuant to Articles 1802 and 1803 of the Civil Code of Puerto

Rico.

Complaint
Sarah Ortiz vs, Doctors et al
Page 15

WHEREFORE, plaintiff respectfully requests from this Honorable Court to:

1.      Grant a judgment against codefendants for the sums herein requested together with pre-judgment interests, costs and reasonable attorney's fees.

2.      Grant plaintiff such other relief, as it may deem proper and necessary under the circumstances.

3.      Pursuant to rule 38(b) of the Federal Rules of Civil Procedure, plaintiff also hereby request a trial by jury in this action.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 16th day of October, 2017.

**S/Rafael E. García Rodón**
**RAFAEL E. GARCÍA RODÓN**
USDC-PR No. 129911
Banco Popular de PR Bldg.
206 Tetuán Street
7th Floor, Suite 701
San Juan, PR 00901
Tel. (787) 722-7788
Fax (787) 722-7748
E-mail:  rgrlaw@gmail.com